1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM CHARLES CLERK,**<br><br>                              Petitioner,<br><br>        **v.**<br><br>**P.D. BRAZELTON, Warden,**<br><br>                              Respondent. | **Case No. 1:12-cv-01474 MJS (HC)**<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(Doc. 10)** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Leanne LeMon of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 7, 9.)

I.    <u>PROCEDURAL BACKGROUND</u>

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction for evading arrest with two prior serious or violent felonies. (Clerk's Tr. 271-72.) Pursuant to California Three Strikes Law, on December 21, 2009, the trial court sentenced Petitioner to serve an indeterminate term of twenty-five years to life in jail. (Id.)

1

1  Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

2  District, on June 23, 2010. (Lodged Doc. 6.) On June 1, 2011, the court affirmed the

3  judgment. (Answer, Ex. A.) Petitioner filed a petition for review with the California

4  Supreme Court on June 27, 2011. (Lodged Doc. 9.) The Supreme Court summarily

5  denied the petition on August 10, 2011. (Lodged Doc. 10.)

6  Petitioner proceeded to seek post-conviction collateral relief in the form of

7  petitions for writ of habeas corpus. On March1, 2012, Petitioner filed a petition for writ of

8  habeas corpus in Madera County Superior Court. The petition was denied in a reasoned

9  decision on April 6, 2012. (Lodged Docs. 11-12.) Petitioner filed a petition for writ of

10  habeas corpus with the Fifth District Court of Appeal on May 17, 2012. The Petition was

11  denied on September 6, 2012. (Lodged Doc. 13-14.)

12  Petitioner filed the instant federal habeas petition on September 10, 2012. (Pet.,

13  ECF No. 1.) In his petition, Petitioner presents five claims for relief: (1) that the trial court

14  erroneously denied his motion for mistrial and to exclude witnesses; (2) that the state

15  court's decision to exclude impeachment evidence violated Petitioner's right to present a

16  defense; (3) that the prosecutor committed misconduct in discussing the case with the

17  peace officers prior to their testimony; (4) that the trial court abused its discretion in

18  denying Petitioner's motion to exclude a previous strike; and (5) that his sentence

19  violates the prohibition on cruel and unusual punishment.

20  Respondent filed an answer to the petition on October 31, 2012. (Answer, ECF

21  No 10.) Petitioner did not file a traverse. The matter stands ready for adjudication.

22  **II.    STATEMENT OF THE FACTS[1]**

23  Following a jury trial, appellant William Charles Clerk (who is also
   known as William Charles Lane) was found guilty of felony driving in willful
24  or wanton disregard for safety of persons or property while fleeing from
   pursuing police officers (Veh. Code, § 2800.2, subd. (a)), and the
25  allegation that appellant had suffered two prior strikes (Pen. Code, § 667,
   subds. (b)-(i))[n1] was found true. The trial court sentenced appellant to 25

26

27  [1]The Fifth District Court of Appeal's summary of the facts in its June 1, 2011 opinion is presumed correct.
   28 U.S.C. § 2254(e)(1).

28

2

years to life in state prison.

**FN1**: All further statutory references are to the Penal Code unless otherwise stated.

Appellant contends that the trial court prejudicially erred when it: (1) denied his motion for mistrial and/or failed to exclude specific testimony; (2) abridged his right to present a defense; (3) failed to find that the prosecutor had committed misconduct; (4) denied his request to call the prosecutor as a witness; (5) improperly admitted photographs into evidence; (6) failed to strike his prior strike convictions; and (7) did not understand its discretion to reduce his conviction to a misdemeanor. Appellant also contends the sentence imposed constitutes cruel and/or unusual punishment. We disagree and affirm.

FACTS

At approximately 10:30 p.m. on March 2, 2006, California Highway Patrol (CHP) officers Mayolo Banuelos and Rafael Rivera were in uniform and on duty in a marked patrol vehicle. Banuelos was merging onto southbound Highway 99 in Madera County when he noticed two motorcycles travelling together at a high rate of speed. Banuelos paced the motorcycles and clocked their speed at 90 miles per hour. A records check revealed that one of the motorcycles was stolen. Banuelos decided to instigate a stop and asked for vehicle and helicopter or airplane assistance.

Once the backup vehicle and the helicopter were in place, Officer Banuelos activated the patrol car's lights while the helicopter put a spotlight on the motorcycles. In response to Officer Rivera's request over the public address system, the motorcycle driven by appellant slowed down and began to pull over. But appellant then sped off, and Banuelos turned on his siren and followed appellant.

Appellant turned off the headlights of the motorcycle and continued at a high rate of speed. Officer Banuelos travelled at 135 miles per hour, but was unable to see the motorcycle. When appellant crossed from Madera County into Fresno County, two Fresno CHP officers, Jared Banta and Chad Moran, were waiting and took over the pursuit. While pursuing appellant, Banuelos observed appellant commit several Vehicle Code violations, namely driving without lights at night, going over the speed limit, and traveling in excess of 100 miles per hour.

Officers Banta and Moran were on duty at Olive Avenue and Highway 99 when they saw appellant pass them going at least 130 miles per hour. The officers, with lights and sirens activated on their patrol car, chased appellant on southbound Highway 99 to southbound High 41 and then to Adams Avenue, where appellant turned around and proceeded north on Highway 41 back to Highway 99 northbound. Appellant exited at Golden State Boulevard and again turned south on Highway 99.

When appellant exited at Belmont Avenue, he slowed down, but did not stop at the stop sign. Instead, he traveled north on a frontage road and reentered southbound Highway 99, but travelling north on the shoulder of the lanes. Appellant exited at McKinley Avenue, using the on-ramp as an off-ramp, and ran the stop sign at McKinley and Hughes. The motorcycle

came to a stop when the patrol car was able to cut him off.

Officer Orie Lamb, a flight officer who was in the helicopter with a pilot, followed appellant's course from the air. During the flight, Lamb videotaped the pursuit, which was played for the jury. During the pursuit, Lamb observed appellant driving at "extreme speeds," failing to stop at several stop signs, and driving the wrong way on the freeway.

When appellant finally stopped and got off the motorcycle, Officer Banta pointed his gun at him and forced him to the ground. Because appellant continued to struggle, Banta pepper sprayed him. Banta did not kick or hit appellant with his baton.

Officer Banuelos arrived on the scene and transported appellant to jail. While in the patrol car, appellant told Banuelos that he saw the lights on the patrol car, but decided to "mash out," meaning to take off or get away from the police. Appellant gave no other reason for failing to stop and pull over.

Defense

Appellant, who admitted he had been convicted of two prior felonies, testified in his own defense that he was riding a motorcycle on Highway 99 when he saw a CHP vehicle behind him. The vehicle turned on its lights and appellant began to pull over, but decided against it because there was no one else around. According to appellant, he exited the highway to look for somewhere to stop where he would not be by himself. Appellant was not from the area and did not want to stop in an isolated place.

When appellant did stop, Officer Banta had a gun, although appellant told him he was "already down." Banta then kicked him, stomped on him, hit him with his baton, and pepper sprayed him.

On cross-examination, appellant admitted that, during the pursuit, he was speeding, the lights on the motorcycle were going "off and on," he "really doubt[ed]" that he used his turn signals, that he didn't come to a complete stop at several stop signs, and that he got onto the freeway by using an off-ramp.

Officer Banuelos was recalled and testified that, prior to his testimony, he spoke to the deputy district attorney, who told him what questions she would be asking him when he was on the stand. Banuelos did not discuss the case with the other officers and the deputy district attorney "at the same time."

Rebuttal

Officer Banuelos testified that appellant did not tell him he failed to stop because he was fearful. Nor did he say he was looking for a place to stop that was less isolated. After being arrested, appellant complained about the pepper spray, but did not mention any other injuries.

Correctional officer Lisa Morales did a medical screening on appellant when he was brought to the jail. At the time, appellant complained of left shoulder, back, and right knee pain. He had irritation in

4

his right eye due to the pepper spray but was not taken to the hospital because he had no major medical problems. The shift supervisor, Sergeant Wendell Davis, saw no visible signs of trauma on appellant when he was admitted to the jail.

Stipulations

The parties stipulated that the pursuing officers had a reasonable belief that the motorcycle appellant was driving was stolen, but that appellant was not charged with the crime of vehicle theft or possession of stolen property.

People v. Clerk, 2011 Cal. App. Unpub. LEXIS 4151, 1-7 (Cal. App. 5th Dist. June 1, 2011).

## III. GOVERNING LAW

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Madera County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

2.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put

7

1    it yet another way:

2          As a condition for obtaining habeas corpus relief from a federal
     court, a state prisoner must show that the state court's ruling on the claim
3    being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond
4    any possibility for fairminded disagreement.

5    Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts

6    are the principal forum for asserting constitutional challenges to state convictions." Id. at

7    787. It follows from this consideration that § 2254(d) "complements the exhaustion

8    requirement and the doctrine of procedural bar to ensure that state proceedings are the

9    central process, not just a preliminary step for later federal habeas proceedings." Id.

10   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

11                  3.    Prejudicial Impact of Constitutional Error

12         The prejudicial impact of any constitutional error is assessed by asking whether

13   the error had "a substantial and injurious effect or influence in determining the jury's

14   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

15   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

16   state court recognized the error and reviewed it for harmlessness). Some constitutional

17   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

18   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

19   (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective

20   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

21   Strickland prejudice standard is applied and courts do not engage in a separate analysis

22   applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin

23   v. Lamarque, 555 F.3d at 834.

24   **IV.    REVIEW OF PETITION**

25         **A.    Claim One – Denial of Motion for Mistrial**

26         Petitioner contends that his federal constitutional rights were violated when the

27   state court denied his motion for mistrial based on allegations that the prosecutor and

28   law enforcement witnesses violated the court's order to exclude witnesses. (Pet. at 5.)

1          1.      State Court Decision

2          Petitioner presented his claim in his direct appeal to the California Court of

3    Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

4    Court of Appeal and summarily denied in subsequent petition for review by the California

5    Supreme Court. (See Answer, Ex. A, Lodged Doc. 10.)  Since the California Supreme

6    Court denied the petition in a summary manner, this Court "looks through" the decisions

7    and presumes the Supreme Court adopted the reasoning of the Court of Appeal, the last

8    state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797,

9    804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that

10   higher court agrees with lower court's reasoning where former affirms latter without

11   discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000)

12   (holding federal courts look to last reasoned state court opinion in determining whether

13   state court's rejection of petitioner's claims was contrary to or an unreasonable

14   application of federal law under 28 U.S.C. § 2254(d)(1)).

15         In denying Petitioner's claim, the Court of Appeal explained that:

16   **I. Discussion Between Prosecutor and Officers**

17         Most of appellant's contentions on appeal are based on the denial
18   of several motions and subsequent rulings stemming from one incident
     involving an alleged conversation between the prosecutor and several
19   officers prior to their testimony. For this reason we set forth in detail the
     relevant procedural history and then address each issue in turn.

20         Prior to trial, the trial court granted appellant's motion to exclude
21   witnesses from the courtroom. Thereafter, the People designated Officer
     Banuelos as the chief investigating officer; the defense chose not to
22   designate anyone.

23         During trial, defense counsel made two motions "based on the
     same underlying situation." He first made a motion to disqualify the
24   People's officer witnesses for violating the trial court's order to exclude
     witnesses. According to defense counsel, "the witnesses did discuss
25   testimony after the exclusion order with the prosecutor in a group in the
     hallway yesterday." Defense counsel also made a mistrial motion, further
26   claiming that the same conduct on the part of the prosecutor amounted to
     prejudicial misconduct.

27         In support of his motions, defense counsel called Craig Collins, an
     attorney, who testified that at 10:00 a.m. on November 4, 2009, he
28   witnessed the deputy district attorney and three uniformed police officers

9

"closely together in a circle" in the hallway of the courthouse discussing whether or not travelling the wrong way on a street shoulder amounted to a traffic violation.

In response to this testimony, defense counsel argued that the hallway discussion appeared to be an attempt on the part of the prosecutor to find as many Vehicle Code violations as possible to ensure a conviction. The trial court noted that the question of whether driving on the shoulder of a highway was a traffic violation that carries a "traffic violation point" is a legal issue, not a factual one. The court concluded that:"[A]t least what has been presented is that there was no conversation regarding their testimony. Just the legal issue of whether or not such a behavior constitutes a traffic violation point. [¶] So the Court does not find based on the evidence that has been presented there has been a violation of the Court Order or that there has been prosecutorial misconduct."

During appellant's defense, he recalled Officer Banuelos as a witness.  He asked Banuelos whether he had spoken to the prosecutor about the facts of the case prior to the start of trial. Banuelos stated he had not, only that the prosecutor had told him what questions she would be asking. When asked whether he had spoken with the other officers and the district attorney "at the same time," Banuelos stated, "I didn't talk about the case."

Later that same day, defense counsel wished to call the prosecutor as a witness so that she could testify regarding her discussion with the officers the day before. Defense counsel claimed the testimony would go to the credibility of the officer's testimony. The court noted that, while it had ruled that the witnesses be excluded from the courtroom and that they were not to discuss their testimony with each other, the conversation between the officers and the prosecutor occurred an hour and a half before testimony in the case began and appeared to be about "a point of law, not a point of fact." Furthermore, the court reasoned, calling the prosecutor to the stand would preclude her from continuing on the case.

Defense counsel argued it would be relevant for the jury to know if the prosecutor and the witnesses were discussing the facts of the case prior to their testimony. Further, he argued, since the testimony of Officer Banuelos[FN2] conflicted with that of attorney Collins, an evidentiary hearing involving the other officers who were present was necessary.

FN2: Officer Banuelos's testimony was that he did not discuss the facts of the case with the other officers.

Officers Banta and Moran subsequently testified outside the presence of the jury regarding their pretestimony discussion with the prosecutor. Banta stated that he was sitting in the hallway of the courthouse with Moran, Lamb and Banuelos. Banta spoke to the prosecutor about one of the jurors being late, because Banta had child care issues. The prosecutor handed Banta a list of Vehicle Code violations and asked if any of them "r[a]ng a bell," and asked him to look through the list to see if any of the violations refreshed his memory. Banta then joked with his partner Moran, wondering whether driving the wrong direction on the shoulder of the road was considered passing.

Officer Moran testified that he was sitting with Banta and

"intermittently" with Lamb and Banuelos. At one point, while waiting for a juror to arrive, the prosecutor explained that she would be asking him about specific Vehicle Code violations he had witnessed. The other officers were looking at a list the prosecutor provided them. Moran saw the list, but did not speak to the others about the list.

Following testimony at the hearing, defense counsel argued that it looked like the officers were "being coached as to what Vehicle Code violations occurred," and asked that Officers Moran and Banta be excluded from the trial because they had violated the trial court's order. The trial court denied the request, finding that the discussion between the district attorney and her witnesses prior to trial "was not improper," and it then denied "[a]ll motions on that issue."

Defense counsel then requested that he be able to question Officers Banta and Moran before the jury regarding the list of Vehicle Code violations they had discussed with the prosecutor. The court denied the request based on relevance and on Evidence Code section 352.

A.    Did the trial court abuse its discretion when it denied appellant's motion for mistrial and/or his motion to exclude witnesses?

Appellant contends that the trial court prejudicially erred in denying his mistrial motion following what he perceived to be misconduct on the part of the prosecutor. Appellant's argument is that the prosecutor violated the court's witness exclusion order when she had a discussion with the officer witnesses prior to trial. In the alternative, appellant argues that the trial court erred when it denied his motion to exclude the officer witnesses' testimony for their violation of the same exclusion order. We find no prejudicial error.

Because the basis of appellant's arguments is his belief that the prosecutor and officers violated the court's order to exclude witnesses, we first address this issue. The exclusion of witnesses from the courtroom is a matter within the trial court's discretion. (People v. Valdez (1986) 177 Cal.App.3d 680, 687.) Evidence Code section 777 provides in pertinent part that "the court may exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses."[fn3] The purpose of the order is to prevent tailored testimony and aid in the detection of less than candid testimony. (Geders v. United States (1976) 425 U.S. 80, 87.) "[I]mplicit in the right of the court to exclude witnesses is the right of the court to enforce its order." (People v. Valdez, supra, at p. 691.)

FN3: Appellant relies on section 867 as the statutory basis for the exclusion of witnesses at trial, including the requirement that the court "shall ... order the witnesses not to converse with each other until they are all examined." But respondent contends, and we agree, that section 867 applies to preliminary hearings and not trial, and is inapplicable here. (People v. Hanson (1961) 197 Cal.App.2d 658, 665.)

Here, prior to trial, the trial court granted defense counsel's motion to exclude the officer witnesses. Although the court did not specifically order that the witnesses not discuss their testimony amongst each other, it appears that that was the intent of the order, as evidenced by a later conversation between defense counsel and the court.

11

In any event, the evidence was that the conversation at issue took place prior to any testimony on the part of the officer witnesses. And, as noted by the trial court, the officers' testimony was that they were responding to the prosecutor's request to look over a list of possibly applicable Vehicle Code violations and not that they were discussing their testimony with each other. There was no evidence that the prosecutor's discussion with the officers led any of them to give testimony different from what they otherwise would have given.

We find no abuse of discretion in the trial court's finding that no violation of the court's order occurred and, with this in mind, we address appellant's contention that the trial court erred when it denied his mistrial motion. A trial court's ruling denying a mistrial is reviewed for an abuse of discretion. (People v. Ayala (2000) 23 Cal.4th 225, 283.) A motion for mistrial "should be granted only when a party's chances of receiving a fair trial have been irreparably damaged." (Ibid.)

Appellant based his mistrial motion on prosecutorial misconduct.""'[T]he applicable federal and state standards regarding prosecutorial misconduct are well established. '"A prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"' [Citation.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."" [Citation.]"' [Citation.]" (People v. Ayala, supra, 23 Cal.4th at pp. 283-284.)

Appellant claims that the prosecutor impermissibly coached the prosecution witnesses when she spoke to them prior to their testimony. His complaint is unsupported by the evidence. He bases his assertion on the fact that the prosecutor showed the officers "a list of moving violations" prior to trial, and that these violations were "crucial to the felony element of the current conviction." Banta testified that the prosecutor handed him the list and asked if any of the violations "ring a bell." Moran saw the list, but did not speak to the others about the list. Appellant does not explain how this constituted impermissible coaching, and we conclude that the complained of conduct did not amount to prosecutorial misconduct.

In any event, even were we to find that the prosecutor committed misconduct, we would not conclude that the trial court abused its discretion in denying the mistrial motion. Prosecutorial misconduct does not require a mistrial or reversal on appeal unless it subjects the defendant to prejudice. (People v. Batts (2003) 30 Cal.4th 660, 690; People v. Warren (1988) 45 Cal.3d 471, 480.)

We conclude the conduct complained of did not cause prejudice under any standard. Appellant was charged with violating Vehicle Code section 2800.2, which required a finding that appellant committed "three or more violations that are assigned a traffic violation point count under [Vehicle Code] Section 12810" while fleeing or attempting to elude a pursuing peace officer. (Veh. Code, § 2800.2, subd. (b).) The jury was instructed that the following traffic violations are each assigned a traffic violation point: "One, Driving at a Speed Greater than 100 Miles Per Hour

12

.... [¶] Two, Unlighted Lighting Equipment During Darkness .... [¶] Three, Failure to Stop at a Stop Sign .... [¶] Four, Unsafe Passing on the Right .... [¶] Five, Unlawful Right Turn .... Six, Unlawful Freeway Entry .... [¶] Seven, Driving on the Wrong Side of a Highway .... [¶] And eight, Failure to Use Required Turn Signal ...."

Even without the testimony of Banta and Moran, there was overwhelming evidence that appellant evaded officers in a high-speed chase, committing numerous referenced Vehicle Code violations in the process. Lamb testified to each of the Vehicle Code violations he witnessed, which corresponded to the testimony of the other officers, and was substantiated by the jury's viewing of the DVD of the pursuit.[fn4] The violations included failing to stop at several stop signs and driving the wrong way on the freeway. Furthermore, appellant himself admitted that, during the pursuit, the lights on the motorcycle were going "off and on," that he didn't come to a complete stop at several stop signs, and that he got onto the freeway by using an off-ramp.

[FN4] Appellant contends that, though Lamb apparently did not participate in the conversation with the other officers, it is likely he was exposed to the prosecution's "suggested testimony." Appellant's inference is mere speculation and has no support in the record.

In sum, there was no misconduct, and even if there was, because there was no prejudice, the trial court did not abuse its discretion in denying appellant's motion for mistrial.

Furthermore, we reject appellant's contention that, at a minimum, the officers' testimony should have been excluded."The violation of an exclusion order does not render the witness incompetent to testify nor does it furnish grounds to refuse permission to testify. In fact, to refuse to permit such a witness to testify would be error. The witness who violates the order of exclusion may be guilty of reprehensible conduct, and such witness may be punishable by contempt, and such conduct may affect the witness' credibility, but it does not affect the admissibility of the evidence." (People v. Tanner (1946) 77 Cal.App.2d 181, 187, citing People v. Duane (1942) 21 Cal.2d 71.) Here, there was no violation of the exclusion order, and we find no abuse of discretion in the trial court's denial of appellant's request to exclude the officers' testimony.

People v. Clerk, 2011 Cal. App. Unpub. LEXIS 4151, 1-18 (Cal. App. 5th Dist. June 1, 2011).

2.    Analysis

Evidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process. See Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." See Estelle at 67-68. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

1    Constitution, laws, or treaties of the United States. Id. The court's habeas powers do not

2    allow for the vacatur of a conviction "based on a belief that the trial judge incorrectly

3    interpreted the California Evidence Code in ruling" on the admissibility of evidence. Id. at

4    72.

5          California Evidence Code section 777 allows the court to exclude witnesses from

6    the courtroom to prevent them from hearing the testimony of other witnesses."  California

7    Evidence Code § 777.

8          There is no clearly established law supporting a finding that the failure to exclude

9    witnesses violate due process. In Larson v. Palmateer, 515 F.3d 1057 (9th Cir. 2008),

10   the Ninth Circuit observed, "Neither this court nor the Supreme Court has ever held that

11   the failure to exclude witnesses can violate due process." Id. at 1065.

12                    3.    Discussion

13         Petitioner claims that he was denied due process by allowing the peace officers to

14   testify after they had discussed the case as a group with the prosecutor. Petitioner

15   argues that the prosecutor coached the witnesses, rendering their testimony was

16   unreliable and should be excluded. However, the state court found that the discussion

17   with the officers was limited to attempting to determine if driving the wrong way on a

18   street shoulder was a traffic violation. Based on this finding, the trial court found that the

19   discussion was not about the witnesses' factual testimony, but involved a discussion of a

20   legal issue. On appellate review, the state court found that there was no evidence that

21   the prosecutor's discussion with the officers led them to provide any different testimony

22   than they would have previously given. Further, the state court found that there was no

23   prejudice, as there was ample evidence that Petitioner committed numerous other traffic

24   violations, and that regardless of the testimony provided, the jury could deduce that the

25   violations occurred by watching the video footage recorded from the pursuit helicopter

26   that was admitted into evidence.

27         The question presented on federal habeas review is whether the denial of

28   Petitioner's motions to exclude the witnesses and for a mistrial for allowing the testimony

14

of the witnesses violated Petitioner's federal constitutional rights. Here, Petitioner has not provided persuasive authority to support his assertion that admission of the testimony violated his federal rights or otherwise made the trial fundamentally unfair. This Court finds the state court's decision reasonable, and that fair-minded jurists would debate whether the denial of the motions resulted in a fundamentally unfair trial. The state court decision did not result in a decision that was contrary to, or an unreasonable application of federal law. Accordingly, the failure to exclude the witnesses or declare a mistrial did not violate Petitioner's right to a fair trial. Petitioner is not entitled to habeas corpus relief.

**B.**     **Claim Two – Right to Present a Defense**

Petitioner contends that his federal constitutional rights were violated because the court excluded testimony regarding the conversation of the police officers and the prosecutor before trial, thereby limiting Petitioner's right to present a defense. (Pet. at 12-14.)

1.     State Court Decision

In the last reasoned decision denying Petitioner's claim, the appellate court concluded:

> B. Did the trial court's ruling denying appellant's request to recall the officers to the stand regarding their pretrial conversation with the prosecutor abridge appellant's right to present a defense?
>
>     Appellant contends that the trial court violated his statutory and constitutional rights to present a defense when it refused to allow appellant to recall Officers Banta and Moran to testify before the jury regarding their pretrial conversation with the prosecutor. Appellant argues that this testimony was relevant to impeach both the credibility of Banta and Moran, as well as to impeach Banuelos, who had earlier claimed on the stand that he did not discuss the case with other officers and the prosecutor. We disagree.
>
>     "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment [citation], or in the Compulsory Process or Confrontation clauses of the Sixth Amendment [citations], the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (Crane v. Kentucky (1986) 476 U.S. 683, 690.) As a general matter, however, the application of the ordinary rules of evidence does not impermissibly infringe on a defendant's due process right to present a defense. (People v. Snow (2003) 30 Cal.4th 43, 90.) Indeed,"[a]

defendant's right to present [even] relevant evidence is not unlimited, but rather is subject to reasonable restrictions. [Citations.] A defendant's interest in presenting such evidence may thus '"bow to accommodate other legitimate interests in the criminal trial process."' [Citations.]" (<u>United States v. Scheffer</u> (1998) 523 U.S. 303, 308, fn. omitted.)

Evidence Code section 350 provides: "No evidence is admissible except relevant evidence." Evidence Code section 210 defines relevant evidence as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The California Supreme Court has stated evidence is relevant if it "tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive." (<u>People v. Garceau</u> (1993) 6 Cal.4th 140, 177, disapproved on another ground in <u>People v. Yeoman</u> (2003) 31 Cal.4th 93, 117.) "The trial court has broad discretion in determining the relevance of evidence [citations], but lacks discretion to admit irrelevant evidence. [Citations.]" (<u>People v. Crittenden</u> (1994) 9 Cal.4th 83, 132.)

The trial court also has broad discretion to limit the introduction of evidence that, while it may be relevant, is of limited probative value. (Evid. Code, § 352.) A trial court's determination whether evidence is relevant or has sufficient probative value to be admitted is reviewed for an abuse of discretion. (<u>People v. Sanders</u> (1995) 11 Cal.4th 475, 554-555; <u>People v. Jennings</u> (2000) 81 Cal.App.4th 1301, 1314.) We reverse only if the trial court's ruling was "'arbitrary, whimsical, or capricious as a matter of law. [Citation.]'" (<u>People v. Branch</u> (2001) 91 Cal.App.4th 274, 282.)

We conclude first that the exclusion of the officers' testimony did not violate appellant's constitutional right to present a defense. As we have noted above, the application of ordinary rules of evidence does not impermissibly infringe a defendant's constitutional right to present a defense. (<u>People v. Snow</u>, supra, 30 Cal.4th at p. 90.) Appellant was not denied the opportunity to present his defense. Officers Banta and Moran both testified in the prosecution's case-in-chief that they observed appellant commit numerous Vehicle Code violations during the course of the pursuit. But while defense counsel cross-examined Banta, he chose not to cross-examine Moran. In addition, appellant testified in his own defense.

If the trial court was correct in ruling the proffered additional testimony irrelevant, then obviously no constitutional error occurred. If, instead, the trial court erred in that conclusion, it is nonetheless true that appellant was allowed to present his defense. That he was not allowed to support that defense with the additional testimony of the officers simply did not rise to the level of a constitutional violation. (<u>Cf. People v. Fudge</u> (1994) 7 Cal.4th 1075, 1103 [excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense].)

Second, we conclude that the trial court was correct in ruling the proffered evidence inadmissible. Banuelos testified that he did not discuss the case with the other officers and the prosecutor "at the same time." Instead, he claimed only that the prosecutor told him what questions she would ask him on the stand. According to their testimony at the hearing, the additional testimony of Banta and Moran would have shown, at most,

16

that the prosecutor gave them a list of possible Vehicle Code violations which would help to prove the substantive offense. Neither said that he had had a discussion with Banuelos.

We do not see how this additional evidence would have impeached the officers. Particularly because appellant admitted at trial that he committed numerous Vehicle Code violations during the pursuit and the gravamen of his defense was that he committed those violations because he was afraid to stop in an isolated area due to "previously bad experiences with officers."

We also agree with the trial court that any such testimony would likely have confused the issues for the jury. (<u>People v. Price</u> (1991) 1 Cal.4th 324, 412 ["[T]he trial court has discretion to exclude impeachment evidence ... if it is collateral, cumulative, confusing, or misleading"].)

<u>People v. Clerk</u>, 2011 Cal. App. Unpub. LEXIS 4151, 18-23 (Cal. App. 5th Dist. June 1, 2011).

## 2.   Analysis

A defendant has a constitutional right to present relevant evidence in his own defense. <u>Moses v. Payne</u>, 555 F.3d 742, 756-57 (9th Cir. 2009); <u>see also</u> <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal quotation marks omitted). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," such as evidentiary and procedural rules. <u>Moses</u>, 555 F.3d at 757 (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)). The Supreme Court approves of "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." <u>Holmes v. South Carolina</u>, 547 U.S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). The exclusion of evidence under such well-established evidentiary rules is unconstitutional only where it "significantly undermine[s] fundamental elements of the accused's defense." <u>Scheffer</u>, 523 U.S. at 315. Generally, without "unusually compelling circumstances" the right to present a defense is not outweighed by the strong state interest in administration of its trials. <u>Moses</u>, 555 F.3d at 757; <u>Perry v. Rushen</u>, 713 F.2d 1447, 1452 (9th Cir. 1983). A state court's interpretation of its own evidentiary rules only

17

1  rises to a constitutional violation if it amounts to a per se bar on critical defense evidence

2  or if it applies the rules of evidence in a mechanistic fashion. <u>See</u> <u>Green v. Georgia</u>, 442

3  U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979) (per curiam); <u>Chambers v. Mississippi</u>,

4  410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

5      Upon review, the state court found that Petitioner was provided the opportunity to

6  cross-examine all the police officers involved in the pre-trial conversation. Further, the

7  court found that the trial court was correct in ruling that testimony regarding the

8  conversation before trial was irrelevant and therefore properly inadmissible because

9  there was no evidence that the prosecutor discussed the testimony to be provided at trial

10  with the officers at the meeting. Further, if the evidence was admissible, the court found

11  any error harmless as there was evidence that Petitioner committed many other vehicle

12  code violations during the pursuit, and that Petitioner admitted that he committed the

13  violations because he was afraid to stop in an isolated area with the officers due to prior

14  bad experiences. The state court was reasonable in finding that any potential error was

15  harmless in light of the other sources of evidence support Petitioner's guilt. The Court

16  finds that the state court was not unreasonable in determining that Petitioner's

17  fundamental due process rights were not violated by the court's evidentiary ruling.

18      The state court adjudication of the claim did not result in a decision that was

19  contrary to, or involved an unreasonable application of, clearly established Federal law,

20  or result in a decision that was based on an unreasonable determination of the facts in

21  light of the evidence. 28 U.S.C. § 2254(d). Petitioner is not entitled to relief.

22      **C.    Claim Three – Prosecutorial Misconduct**

23      In his third claim, Petitioner contends that the prosecution committed misconduct

24  in violating the court's exclusion order and discussing the case with the police officers

25  prior to the officers' testimony. (Pet. at 6, 14-15.)

26      1.    State Court Decision

27      In the last reasoned decision denying Petitioner's claim, the appellate court

28  stated:

18

1    C. Did the prosecutor violate the court order to exclude witnesses?

2         Appellant makes an additional argument, similar to that made above, that
3         the prosecutor committed misconduct when she discussed the case with
          the officers prior to their testimony. However, having found that the
4         prosecutor did not commit prejudicial misconduct in the context of
          addressing appellant's mistrial motion, we need not address this issue
5         further. We therefore reject appellant's contention.

6    People v. Clerk, 2011 Cal. App. Unpub. LEXIS 4151 (Cal. App. 5th Dist. June 1, 2011).

7              2.    Legal Standard

8         A criminal defendant's due process rights are violated when a prosecutor's

9    misconduct renders a trial fundamentally unfair. Parker v. Matthews, 132 S. Ct. 2148,

10   2153, 183 L. Ed. 2d 32 (2012) (per curiam); Darden v. Wainwright, 477 U.S. 168, 181,

11   106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); Comer v. Schriro, 480 F.3d 960. 988 (9th Cir.

12   2007).   Claims of prosecutorial misconduct are reviewed "'on the merits, examining the

13   entire proceedings to determine whether the prosecutor's [actions] so infected the trial

14   with unfairness as to make the resulting conviction a denial of due process.'" Johnson v.

15   Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). See also Greer v. Miller, 483

16   U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987); Donnelly v. DeChristoforo, 416

17   U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); Towery v. Schriro, 641 F.3d 300,

18   306 (9th Cir. 2010). Relief on such claims is limited to cases in which the petitioner can

19   establish that prosecutorial misconduct resulted in actual prejudice. Darden, 477 U.S. at

20   181-83. See also Towery, 641 F.3d at 307 ("When a state court has found a

21   constitutional error to be harmless beyond a reasonable doubt, a federal court may not

22   grant habeas relief unless the state court's determination is objectively unreasonable").

23   Prosecutorial misconduct violates due process when it has a substantial and injurious

24   effect or influence in determining the jury's verdict. See Ortiz-Sandoval v. Gomez, 81

25   F.3d 891, 899 (9th Cir. 1996).

26              3.    Analysis

27        As explained previously, the California Court of Appeal did not find that the

28   prosecutor's actions resulted in misconduct. Moreover, to the extent that the prosecutor

1  engaged in misconduct by conversing with the officers before they testified, it did not

2  result in prejudice to Petitioner. As the Court of Appeal described in rejecting Petitioner's

3  earlier claims, there was no evidence that the prosecutor acted improperly, such as

4  attempting to coach the witnesses testimony. Instead, the court found that the

5  prosecutor only asked the officers a legal question about vehicle violations.

6      Based on the evidence presented, the state court's finding that the conversation

7  did not rise to the level of misconduct was reasonable. Certainly the decision of the state

8  appellate court rejecting this claim of prosecutorial misconduct is not "so lacking in

9  justification that there was an error well understood and comprehended in existing law

10  beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

11  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

12      Moreover, even if the instance of misconduct about which Petitioner complains

13  should be considered misconduct, he has not shown it was so unfair as to constitute a

14  due process violation. There was ample evidence that Petitioner committed numerous

15  traffic violations, and that regardless of the testimony provided, the jury could deduce

16  that the violations occurred by watching the video footage recorded from the pursuit

17  helicopter that was admitted into evidence.  Accordingly, the decision of the state court in

18  rejecting Petitioner's claim of prosecutorial misconduct is not contrary to or an

19  unreasonable application of United States Supreme Court authority. Petitioner is not

20  entitled to relief.

21  **D.  Claims 4 and 5: Failure of Trial Court to Use Discretion During
22  Sentencing and that the Sentence Resulted in Cruel and Unusual
    Punishment**

23      In his fourth and fifth claims, Petitioner argues that the trial judge failed to use

24  discretion to strike Petitioner's prior felonies resulting in a grossly disproportionate

25  sentence. (Pet. at 6, 15-16.)

26              1.    State Court Decision

27      The last reasoned decision denying Petitioner's claim was that of the Fifth District

28  Court of Appeal. In denying Petitioner's claim, the appellate court explained:

1    III. Prior Strike Convictions

2            Appellant contends the trial court abused its discretion, or in the
3    alternate was unaware of its discretion, when it failed to dismiss one or
     both of his prior strike convictions pursuant to section 1385 and <u>People v.
     Superior Court</u> (<u>Romero</u>) (1996) 13 Cal.4th 497 (<u>Romero</u>), thereby
4    violating his federal due process rights. Specifically, appellant claims that
     the trial court relied on the wrong standard in exercising its discretion
5    because it focused on appellant's strikes and criminal history and failed to
     note that the instant crime was neither serious nor violent, resulted in no
6    property damage or injury to others, and that appellant had not been
     involved in any violent crimes "for a substantial period of time." We
7    disagree.

8            Section 1385 grants trial courts the discretion to dismiss a prior
     strike conviction if the dismissal is in the furtherance of justice. (§ 1385,
9    subd. (a); <u>Romero</u>, supra 13 Cal.4th at pp. 529-530.) In deciding whether
     to dismiss a prior strike conviction, the trial court "must consider whether,
10   in light of the nature and circumstances of his present felonies and prior
     serious and/or violent felony convictions, and the particulars of his
11   background, character, and prospects, the defendant may be deemed
     outside the scheme's spirit, in whole or in part, and hence should be
12   treated as though he had not previously been convicted of one or more
     serious and/or violent felonies." (<u>People v. Williams</u> (1998) 17 Cal.4th 148,
13   161.)

14           The trial court's decision not to dismiss a prior strike conviction is
     reviewed under the deferential abuse of discretion standard. (<u>People v.
15   Carmony</u> (2004) 33 Cal.4th 367, 374.) An abuse of discretion is
     established by demonstrating the trial court's decision is "irrational or
16   arbitrary. It is not enough to show that reasonable people might disagree
     about whether to strike one or more of [the defendant's] prior convictions."
17   (<u>People v. Myers</u> (1999) 69 Cal.App.4th 305, 310.) When the record
     shows the trial court considered relevant factors and acted to achieve
18   legitimate sentencing objectives, the court's decision will not be disturbed
     on appeal. (<u>Ibid.</u>)
19

20           At the sentencing hearing, the trial court stated that it had read and
     considered, inter alia, appellant's motion to dismiss the prior strike
21   convictions, as well as the People's opposition to the motion. In support of
     the motion, defense counsel argued that, while the crime committed by
22   appellant "had the potential, very great potential, of causing injury and
     people getting injured, hurt or even killed," it was not a "crime of violence."
23   He argued further that he did not believe appellant was the type of
     individual who would "fall under the Three Strikes Law" because his last
24   strike occurred in 1997.

25           The trial court denied appellant's motion, stating:"[Appellant] is 41
     years old. He has in the last 20 years apparently used four different
26   names, ... four different dates of birth and four different Social Security
     numbers. [¶] When he was 20 years old he was convicted of a
27   misdemeanor violation of Vehicle Code section 10851, subdivision (a),
     and placed on probation. [¶] He was also convicted of first degree robbery
28   with use of a handgun, a felony conviction, and he received ... two years in
     state prison for that offense. [¶] ... [¶] When he was 21 years old he was

convicted of a felony violation of section 664/10851, subdivision (a), of the Vehicle Code. [¶] ... [¶] When he was 29 years old he was convicted of second degree robbery with use of a handgun.... It was a residential robbery ... in which ... [five people] were victimized. [¶] [A]nd he received five years in state prison. [¶] So when he was out of prison in 2003 at the age of 35 he received a misdemeanor conviction for a 14601.1. [¶] On March 2nd, 2006, he engaged in the acts that gave rise to the conviction in this case. The Court heard those facts twice because this jury trial occurred twice. And they involved extreme high speeds on a motorcycle, violation of multiple Vehicle Code regulations, including driving the wrong way on the freeway, endangering the lives of other people on the roads. [¶] According to the Probation Department, he then bailed out of jail on this case and in July of that same year four months later did the same thing in Alameda County, felony violation of section 2800.2, subdivision (a). He was convicted in that county and sent to prison before he was brought back to this county for ... trial and sentencing in this case. [¶] He was on misdemeanor probation when he committed this crime. [¶] ... [¶] His criminal record has been ongoing and consistent for his entire adult life and even into his late 30s, which is how old he was when this crime was committed. He continues to commit crimes. [¶] The Court does not find that [appellant] is outside the law that was enacted by our legislators commonly known as the Three Strikes Law and denies the motion under Romero to strike either one of the prior strikes."

From this record it is clear that the trial court was well aware of its discretion and that it carefully reviewed the particulars of appellant's criminal record, including his current offense, his character, and his prospects. (People v. Williams, supra, 17 Cal.4th at p. 161.) We therefore reject appellant's contention that the trial court abused its discretion when it denied his motion to dismiss one or both of his prior strike convictions. We further reject his contention that the trial court's denial of his Romero motion without the proper use of its discretionary power violated appellant's federal due process rights. The court properly denied appellant's Romero motion, and in doing so, did not violate appellant's federal due process rights.

IV. Wobbler

A violation of Vehicle Code section 2800.2, subdivision (a) is characterized as a "wobbler," and may be punished, in the trial court's discretion, as either a misdemeanor or a felony. Even in cases involving prior strike allegations, the trial court has discretion to determine whether a wobbler crime is a misdemeanor or felony: "[W]e hold that three strikes prior convictions do not preclude a trial court from reducing an offense originally charged as a felony either by imposing a misdemeanor sentence (§ 17(b)(1)) or by declaring it a misdemeanor upon a grant of probation (§ 17(b)(3))." (People v. Superior Court (Alvarez) (1997) 14 Cal.4th 968, 979 (Alvarez).)

If a violation of Vehicle Code section 2800.2, subdivision (a) is determined to be a misdemeanor, the maximum punishment is one year in custody; if it is determined to be a felony, the punishment is one year in state prison. However, because the trial court determined that appellant had been convicted of two prior strikes, it sentenced him under the three strikes law to prison for 25 years to life. Appellant contends that the trial court was unaware of its discretion under section 17, subdivision (b) to

reduce his felony conviction to a misdemeanor, requiring remand for resentencing. We disagree.

The decision whether to reduce a wobbler offense to a misdemeanor lies in the discretion of the trial court. (Alvarez, supra, 14 Cal.4th at p. 977.)"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (Alvarez, supra, at pp. 977-978.)To meet this burden, the appellant must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion." (People v. Davis (1996) 50 Cal.App.4th 168, 172; see, e.g., People v. Metcalf (1996) 47 Cal.App.4th 248, 251-252 [court believed it lacked discretion to strike a prior felony conviction].) If the record is silent, the appellant has failed to sustain his or her burden of proving error and we affirm. (People v. Davis, supra, at p. 172.)

There is no indication here that the trial court was not fully aware of its discretion to reduce the felony to a misdemeanor. Furthermore, the trial court's statements during its denial of appellant's Romero motion to strike his prior convictions clearly indicate it had no inclination to reduce appellant's current conviction to a misdemeanor. Factors relevant in determining whether to reduce a felony to a misdemeanor in three strikes circumstances include, "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]" (Alvarez, supra, 14 Cal.4th at p. 978.) The trial court described appellant's current crime as one which involved "extreme high speeds on a motorcycle, violation of multiple Vehicle Code regulations, including driving the wrong way on the freeway, endangering the lives of other people on the roads."

Furthermore, in determining whether to reduce a wobbler originated as a three strike filing to a misdemeanor, "the current offense cannot be considered in a vacuum; given the public safety considerations underlying the three strikes law, the record should reflect a thoughtful and conscientious assessment of all relevant factors including the defendant's criminal history." (Alvarez, supra, 14 Cal.4th at p. 979.) Appellant's criminal history, which the trial court described as "ongoing and consistent," was the chief factor in the court's denial of appellant's Romero motion and in the court's determination that appellant fell within the spirit of the three strikes law.

Appellant has failed to affirmatively demonstrate that the trial court was unaware of its discretion under section 17, subdivision (b), and we reject his claim to the contrary.

V. Cruel and/or Unusual Punishment

Finally, appellant contends that the imposition of an indeterminate third strike term of 25 years to life for his current conviction is grossly disproportionate, constituting cruel and/or unusual punishment in violation of the United States and California Constitutions. We will affirm.

The purpose of the three strikes law is not to subject a criminal defendant to a life sentence merely on the basis of the latest offense. Rather, the purpose is to punish recidivist behavior. (People v. Diaz (1996) 41 Cal.App.4th 1424, 1431; People v. Kinsey (1995) 40 Cal.App.4th 1621, 1630-1631.) Habitual offender statutes have withstood constitutional scrutiny based on assertions of cruel and unusual punishment, as well as claims of a disproportionate sentence. (See People v. Ayon (1996) 46 Cal.App.4th 385, 398-400, disapproved on other grounds in People v. Deloza (1998) 18 Cal.4th 585, 593-595, 600, fn. 10.)

Appellant argues that the instant offense was "non-violent" and therefore the sentence imposed is grossly disproportionate to the crime. What appellant fails to consider is that his crime could very well have caused a great deal of violence. In any event, "society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence. [Citations.]" (People v. Cooper (1996) 43 Cal.App.4th 815, 826.)

Moreover, appellant is being punished not merely for the current offense but also because of his recidivism. (People v. Romero (2002) 99 Cal.App.4th 1418, 1432.) In evaluating the facts set forth in In re Lynch (1972) 8 Cal.3d 410, appellant's sentence is not so disproportionate to the crime that it shocks the conscience, and it does not violate the state constitutional prohibition against cruel or unusual punishment. (See People v. Stone (1999) 75 Cal.App.4th 707, 715; People v. Martinez (1999) 71 Cal.App.4th 1502, 1510-1517; People v. Cline (1998) 60 Cal.App.4th 1327, 1337-1338; People v. Cooper, supra, 43 Cal.App.4th at pp. 825-828.) An overview of appellant's criminal record illustrates that neither increased penalties nor age has deterred him from committing more crimes.

In addition, appellant cannot demonstrate that his sentence violates the prohibition against cruel and unusual punishment contained in the federal Constitution. (Lockyer v. Andrade (2003) 538 U.S. 63, 66-67, 77 (Andrade); Ewing v. California (2003) 538 U.S. 11, 29-31 (Ewing); People v. Cooper, supra, 43 Cal.App.4th at pp. 820-825.) In Ewing, the United States Supreme Court held that the cruel and unusual punishment clause of the federal Constitution contains a narrow proportionality principle that prohibits grossly disproportionate sentences. (Ewing, supra, at p. 23.) The court upheld a 25-year-to-life sentence under the three strikes law for a defendant with prior burglary and robbery convictions who shoplifted three golf clubs. (Id. at pp. 17-18, 29-31; see also Andrade, supra, at pp. 66-68, 77 [two consecutive terms of 25 years to life under three strikes law for thefts of videotapes not grossly disproportionate].)

Appellant contends his situation is similar to that addressed in People v. Carmony (2005) 127 Cal.App.4th 1066, where the court found a third strike sentence of 25 years to life imposed for the defendant's failure to reregister as a sex offender violated both the federal and state constitutional prohibitions against cruel and/or unusual punishment. In doing so, the court emphasized that the defendant had in fact registered, and his failure to reregister was a purely technical violation with no practical effect. (Id. at p. 1078.) "Here, there was no new information to update and the state was aware of that fact. Accordingly, the requirement that defendant reregister within five days of his birthday served no stated or rational purpose of the registration law and posed no danger or harm to

1
2
3
4

anyone." (Id. at p. 1073.) "Because a 25-year recidivist sentence imposed solely for failure to provide duplicate registration information is grossly disproportionate to the offense, shocks the conscience of the court and offends notions of human dignity, it constitutes cruel and unusual punishment under both the state and federal Constitutions." (Ibid.) The court specifically declined to consider "the appropriateness of a recidivist penalty where the predicate offense does not involve a duplicate registration." (Id. at p. 1073, fn. 3.)

5
6
7
8
9
10
11
12

In contrast to People v. Carmony, supra, 127 Cal.App.4th 1066, appellant's conviction in the instant case was not a technical violation of the law that "served no stated or rational purpose." (Id. at p. 1073.) Appellant's case is clearly within the parameters set by Ewing and Andrade. As in those cases, "[i]f terms of 25 years to life and 50 years to life are not '"grossly disproportionate"' for petty theft with prior felony convictions," then the indeterminate term imposed here is not grossly disproportionate to the offense of driving in willful or wanton disregard for safety of persons or property while fleeing from pursuing police officers, given appellant's long criminal history of prior strike convictions, incarcerations, parole violations, as well as being on misdemeanor probation when he committed the instant offense. (People v. Em (2009) 171 Cal.App.4th 964, 977; see Andrade, supra, 538 U.S. at p. 77; Ewing, supra, 538 U.S. at pp. 28-30; People v. Romero, supra, 99 Cal.App.4th at pp. 1432-1433.)

13
14

People v. Clerk, 2011 Cal. App. Unpub. LEXIS 4151, 28-40 (Cal. App. 5th Dist. June 1, 2011).

15

2.      Analysis

16

Petitioner does not allege that the sentence he challenges was imposed under an invalid

17

statute or that it was in excess of that actually permitted under state law. Cf. Marzano v.

18

Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where the

19

petitioner's sentence of life imprisonment without the possibility of parole could not be

20

constitutionally imposed under the state statute upon which the conviction was based);

21

see also Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976) (So long as a

22

sentence imposed by a state court "is not based on any proscribed federal grounds such

23

as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency,

24

the penalties for violation of state statutes are matters of state concern.") Rather,

25

Petitioner merely claims that the trial court abused its discretion under state law in

26

denying his Romero motion and erred in its application of state sentencing law.

27

Absent fundamental unfairness, federal habeas corpus relief is not available for a

28

state court's misapplication of its own sentencing laws. Estelle v. McGuire, 502 U.S. 62,

1   67 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (1986); Christian v. Rhode, 41 F.3d

2   461, 469 (9th Cir. 1994) (federal habeas relief unavailable for claim that state court

3   improperly relied upon a prior federal offense to enhance punishment); Miller v.

4   Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (claim that a prior conviction was not a

5   "serious felony" under California sentencing law not cognizable in federal habeas

6   proceeding). To state a cognizable claim for federal habeas corpus relief based on an

7   alleged state sentencing error, a petitioner must show that the alleged sentencing error

8   was "so arbitrary or capricious as to constitute an independent due process" violation.

9   Richmond v. Lewis, 506 U.S. 40, 50 (1992).

10      Here, Petitioner cannot show that the state sentencing court's decision was

11   arbitrary or capricious. The sentencing judge declined to strike petitioner's prior

12   convictions for purposes of sentencing after thoroughly considering the relevant

13   circumstances and applicable state sentencing law. The state appellate court, in turn,

14   also carefully considered those factors in rejecting petitioner's contention on appeal that

15   the sentencing court abused its discretion under state law. Under these circumstances,

16   Petitioner fails to demonstrate an independent due process violation and the state

17   courts' rejection of Petitioner's Romero claim is not contrary to, or an unreasonable

18   application of federal law. See Lopez v. Virga, 2012 U.S. Dist. LEXIS 155592 (E.D. Cal.

19   Oct. 29, 2012). Accordingly, Petitioner is not entitled to federal habeas relief with respect

20   to this claim.

21      Additionally, Petitioner's claim that his punishment was cruel and unusual under

22   the Eighth Amendment fails. The Supreme Court has held, in the context of AEDPA

23   review of a California Three Strikes Law sentence, that the relevant, clearly established

24   law regarding the Eighth Amendment's proscription against cruel and unusual

25   punishment is a "gross disproportionality" principle, the precise contours of which are

26   unclear and applicable only in the "exceedingly rare" and "extreme" case. Lockyer v.

27   Andrade, 538 U.S. 63, 73-76 (2003) (discussing decisions in Harmelin v. Michigan, 501

28   U.S. 957 (1991), Solem v. Helm, 463 U.S. 277 (1983), and Rummel v. Estelle, 445 U.S.

1   263 (1980)); Ewing v. California, 538 U.S. 11, 23 (2003). "Successful challenges to the

2   proportionality of particular sentences will be exceedingly rare." Solem, 463 U.S. at 289-

3   90.

4       Generally, the Supreme Court has upheld prison sentences challenged as cruel

5   and unusual, and in particular, has approved recidivist punishments similar to or longer

6   than Petitioner's 25 years to life sentence, for offenses of equivalent or lesser severity.

7   See Andrade, 538 U.S. at 77 (denying habeas relief on Eighth Amendment

8   disproportionality challenge to Three Strikes sentence of two consecutive terms of 25

9   years to life for stealing $150.00 in videotapes when petitioner had a lengthy but

10  nonviolent criminal history); Harmelin, 501 U.S. at 1008-09 (mandatory life sentence

11  without parole for first offense of possession of more than 650 grams of cocaine is not so

12  disproportionate as to violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374-

13  75 (1982) (per curiam) (upholding non-recidivist sentence of two consecutive 25 prison

14  terms for possession of nine ounces of marijuana and distribution of marijuana); cf.

15  Solem, 463 U.S. at 280-81 (sentence of life imprisonment without possibility of parole for

16  seventh nonviolent felony violates Eighth Amendment).

17      Moreover, in cases arising on habeas review following the Supreme Court's

18  decisions in Andrade and Ewing, the Ninth Circuit has frequently rejected Eighth

19  Amendment challenges to California's Three Strikes Law sentences. See, e.g., Nunes v.

20  Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007) (sentence of 25 years to life for crime

21  of petty theft with a prior did not offend the Constitution where petitioner had extensive

22  and serious felony record); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (no

23  Eighth Amendment violation where petitioner with prior offenses involving violence was

24  sentenced to 25 years to life for possession of .036 grams of cocaine base); Rios v.

25  Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (sentence of 25 years to life for offense of

26  petty theft with a prior imposed on petitioner with two prior robbery convictions was not

27  objectively unreasonable); cf. Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004)

28  (finding that habeas relief was warranted in "exceedingly rare" case where petitioner with

1  minimal criminal history and no prior state prison sentence received a Three Strikes

2  sentence for offense of petty theft with a prior); Gonzalez v. Duncan, 551 F.3d 875 (9th

3  Cir. 2008) (life sentence under California's Three Strikes law, triggered by a failure to

4  register as a sex offender, violated the Eighth Amendment proscription against cruel and

5  unusual punishment because there was no "rational relationship" between a failure to

6  register and the probability defendant would recidivate as a violent criminal or sex

7  offender).

8         Here, Petitioner was sentenced to 25 years to life in prison for an evading arrest

9  charge, and a finding that he had previously suffered at least two prior serious felony

10  convictions including two counts of robbery with use of a handgun. People v. Clerk, 2011

11  Cal. App. Unpub. LEXIS 4151 at 30-32. First, Petitioner's sentence was less than that of

12  the defendants in Andrade and Harmelin, and allows for the possibility of parole unlike in

13  Solem. See Andrade, 538 U.S. at 74; Taylor, 460 F.3d at 1098 (eligibility for parole,

14  albeit after 25 years, made California Three Strikes sentence "considerably less severe

15  than the one invalidated in Solem"). Further, Petitioner third strike, as noted by the state

16  court Petitioner's crime of conviction was reckless dangerous. People v. Clerk, 2011 Cal.

17  App. Unpub. LEXIS 4151 at 35 (noting that the trial court found that the crime involved

18  "extreme high speeds on a motorcycle, violation of multiple Vehicle Code regulations,

19  including driving the wrong way on the freeway, [and] endangering the lives of other

20  people on the roads.")

21         For all of the above reasons, and in light of controlling jurisprudence, this Court

22  cannot find that Petitioner's sentence is grossly disproportionate to his commitment

23  offense. Thus, the state court's rejection of Petitioner's fourth and fifth claims was not

24  contrary to or an unreasonable application of federal law. Accordingly, Petitioner's fourth

25  and fifth claims are rejected.

26  **V.    CONCLUSION**

27         Petitioner is not entitled to relief with regard to the claims presented in the instant

28  petition. The Court therefore orders that the petition be DENIED.

## VI. **CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.   Petitioner has not made the required substantial showing of the denial of a constitutional right.   Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**VII.   <u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   June 3, 2014          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE